UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| ORVILLE WILLIAM SCHULTZ, | * | CIV. 11-4126 |
|  | * |  |
| Petitioner, | * |  |
| -vs- | * | REPORT and RECOMMENDATION |
|  | * |  |
| DOUGLAS WEBER, and | * |  |
| MARTY JACKLEY, | * |  |
|  | * |  |
| Respondents. | * |  |
|  | * |  |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Petitioner, Orville William Schultz ("Schultz"), is an inmate at the South Dakota State Penitentiary. He filed a *pro se* application for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1 and Doc. 8) on September 1, 2011. The Respondent has filed a Reply to the Petition (Doc. 15) with several attachments, asserting the state courts correctly dismissed Schultz's habeas claims. The Respondent also submitted for the Court's review the relevant state court records and transcripts of the underlying state court criminal jury trial and the evidentiary hearing from the state habeas proceedings.

## JURISDICTION

Schultz was convicted in Minnehaha County, South Dakota and is currently incarcerated pursuant to a judgment of a South Dakota state court. These proceedings were referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Judge Schreier's standing order dated March 18, 2010. The pending matter is therefore properly before this Court pursuant to 28 U.S.C. § 2254.

## PROCEDURAL HISTORY

On September 22, 2005, Schultz was charged in an eight count indictment in Minnehaha County, South Dakota. The Indictment alleged alternative Second and Third degree rape charges and two counts of Attempted rape. Counts One through Three alleged Second Degree Rape. Count Four alleged attempted Second Degree Rape. Counts Five through Seven alleged Third Degree Rape, and Count Eight alleged Attempted Third Degree Rape. The dates alleged for the Second and Third Degree rape charges were August, 2004 through September 5, 2005. The date for the alleged

Attempted Second/Third Degree Rape Charges was September 5, 2005. *See* CR 05-5423, Second Judicial Circuit, Minnehaha County, South Dakota.

A jury trial was held on October 10-12, 2006. The jury found Schultz guilty on Counts One and Two (Second Degree Rape). They found him not guilty on Counts Three and Seven (Second Degree Rape and Third Degree Rape). During the trial, the Court dismissed Counts Four and Eight (the Attempted Rape counts). The Second Judicial Circuit Court, The Honorable Joseph Neiles presiding, entered a Judgment of Conviction on February 23, 2007. Judge Neiles sentenced Schultz to twenty-five years in prison on each Count, to run concurrently.

Schultz filed a direct appeal on June 29, 2007. He raised the following issue on direct appeal:

> **1.    Whether the Indictment against Shultz was fatally defective?**
> The South Dakota Supreme Court found it was not.

On September 2, 2008, the South Dakota Supreme Court summarily denied Schultz's appeal. *See State v. Schultz*, 757 N.W.2d 328 (S.D. 2008) (table).

Through counsel, Schultz filed a state habeas petition on August 12, 2009. He filed an amended petition on May 10, 2010. *See Schultz v. Weber*, CV. 09-3596, Second Judicial Circuit, Minnehaha County, South Dakota. The Honorable William Srstka presided over Schultz's state habeas proceedings. Schultz's state habeas petition raised the following issues:[1]

> **1.    Petitioner was Denied Effective Assistance of Counsel at the Trial Level**
>
> **A.    Attorney Der Hagopian moved to withdraw on a number of occasions due to not being paid, but ultimately represented Petitioner through his jury trial and sentencing.**
>
> **B.    Petitioner's attorney failed to investigate any possible defenses that his client had. Petitioner's attorney hired an investigator, but to Petitioner's knowledge said investigator did not interview witnesses as directed by Petitioner; said witnesses being material to his defense. To Petitioner's**

---

[1]The issues are re-numbered and lettered for purposes of this Report and Recommendation but are cited verbatim from Schultz's state habeas petition.

knowledge, neither Petitioner's attorney nor the investigator interviewed or attempted to interview any of the State's material witnesses in the underlying matter. Petitioner requested his attorney interview the basketball coach of the team of which the alleged victim was a member, as well as other members of the team to determine when practice ended each day and what time the alleged victim left the school to return home. The witnesses were necessary to refute the alleged victim's time frame of when the alleged acts occurred. Further, Petitioner's attorney failed to interview A.S. a juvenile at the time, who was related to the alleged victim. Said information that may have been gathered was the fact the alleged victim showed no signs of behavior change, but did speak of the fact she didn't like living with Terry and Mary Schultz as Mary would abuse her. It was further important, as much of the defense related to the fact that Terry was forcing L.S. to say the things against Orville in order for her father to obtain money from Orville, which is central to the credibility of the State's case.

C.    Trial Counsel failed to hire an expert to refute the testimony of the State's expert, Dr. Mailloux. Dr. Mailloux provided the jury with his expert opinion and Petitioner's attorney failed to consult with another expert and failed to hire another expert to refute the damaging testimony of Dr. Mailloux. In the underlying matter there was no physical evidence of any crime, thus making Dr. Mailloux's expert opinion regarding whether or not a rape had occurred was that much more prejudicial. In fact, Dr. Mailloux's testimony indicated that an exam of L.S. found no scarring, no tearing, no bruising, and that her hyman (sic) was in tact (sic). Dr. Mailloux however testified that she was probably subject to sexual abuse. With no physical evidence, the case centered around credibility. Petitioner's attorney consulted with no expert, nor hired any expert, to prepare for his cross-examination of Dr. Mailloux, nor did Petitioner's attorney hired (sic) an expert in order to refute the testimony of Dr. Mailloux.

D.    Petitioner's attorney failed to file any substantial motions challenging the admission of evidence and the admission of expert opinions. Petitioner's attorney failed to file a Motion for a Daubert Hearing with respect to the testimony of the State's experts, which is especially important when there is no physical evidence of any crime and said testimony is pure conjecture. Petitioner's attorney further failed to consult with a "child interview" specialist to examine the interviews of L.S. to determine whether her testimony was the product of influence or suggestions from the State's experts or Terry Schultz, or any other individual. Petitioner's attorney neither hired an expert, nor consulted with the same to prepare for trial.

3

E.     Petitioner's attorney failed to subpoena witnesses to testify on behalf of the Petitioner even though Petitioner had given his attorney the names, address (sic) and contact information for witnesses that he deemed essential for his defense. Petitioner was prejudiced as a result of said "non-action" of his attorney as he was denied the ability to put forth a full and proper defense. Many of the witnesses Petitioner wanted subpoena'd (sic) were the same ones he wanted interviewed. Petitioner gave his attorney a list of 15 witnesses to subpoena, however his attorney failed to do the same. Petitioner felt that many of the witnesses would bolster his defense and attack the credibility of the State's witnesses, which is essential in a case such as this.

F.     Petitioner's attorney failed to properly confront and cross-examine the State's witnesses who testified at trial. Petitioner's attorney failed to elicit bias and motive information from the State's witnesses and failed to properly and fully cross examine the State's expert. As stated above, Petitioner's attorney neither consulted with experts, nor hired any to testify on behalf of the Petitioner. As a result, Petitioner's attorney was unprepared to cross-examine the State's witnesses in any effective manner. Petitioner's attorney did not ask any questions challenging the validity of the testimony offered to explain the child's inconsistent statements and delayed disclosure. Counsel did not consult with an expert regarding the same, either. A reasonably competent attorney would have prepared for testimony regarding characteristics of sexually abused children and possible explanations for L.D.'s (sic) inconsistent statements and delayed disclosure, aside from the State's expert's opinions. Petitioner's attorney further failed to properly cross-examine the State's witnesses regarding the bias and prejudice surrounding there (sic) testimony when a civil suit regarding the charges was pending. Again, essential in a case where credibility is a key issue and there is no physical evidence;

G.     Petitioner's attorney failed to keep Petitioner fully informed of his case and failed to allow Petitioner to review all pertinent information regarding his case. Petitioner's attorney further failed to properly and timely meet with Petitioner in order to prepare his defense. Petitioner's attorney met with Petitioner approximately five (5) times over the course of ten (10) months of representation. Petitioner's attorney further failed to request a continuance of the trial when Petitioner was having trouble hearing the court proceedings during trial. Petitioner's ear was having trouble and as a result he was unable to hear what was going on in court during trial and unable to assist his attorney in defending his case. It is clear from the transcripts and talking with Petitioner's attorney, that Petitioner was having trouble hearing during the trial. He informed his attorney regarding the fact that he couldn't hear as a result of an acute condition that quickly arose. Petitioner informed his attorney that he

4

wasn't able to assist in the trial as a result of being unable to hear. (This is also a due process violation). Petitioner's attorney never explained to the Court Petitioner's problem and never asked for a continuance, thus going to trial with a client who was unable to assist in his defense in any fashion.

H.    Petitioner's attorney failed to properly object to improper questions posed of the State's witnesses during trial. Many of the State's questions were leading and suggestive, however Petitioner's attorney never objected to them, thus allowing the State's attorney to testify instead of the witnesses.

I.    Petitioner's attorney failed to properly object to improper questions at trial, failed to object to evidence that was admitted at trial, and failed to object to expert testimony during trial, thus failing to preserve the record for appeal. On appeal there were virtually no issues to be raised as a result of Petitioner's attorney failing to object to leading and suggestive questions, failing to object to hearsay, and failing to object improper argument on behalf of the State.

J.    Petitioner's attorney failed to perform proper research regarding the Indictment in this matter, thus failing to file a Motion to Dismiss the same as being unconstitutional on its face.

K.    Petitioner's attorney failed to file motions, failed to meet with his client, failed to subpoena witnesses, failed to interview witnesses, failed to conduct proper research, failed to object to evidence, failed to object to questions, and failed to act as an advocate for Petitioner, thus failing to prepare for and/or conduct a proper trial on behalf of the Petitioner. The allegations in this paragraph are outlined as above.

2.    Petitioner's Sixth Amendment guarantee of jury unanimity was violated because the grand jury's indictment was a duplicitous indictment.

A.    In Counts 1, 2 and 3 of the Indictment, Petitioner is charged with Rape in the Second Degree, said allegation occurring on or about August, 2004, through September 5, 2005. Count 4 of the Indictment charged Petitioner Attempted Rape in the Second Degree, occurring on or about September 5, 2005. Counts 5,6,7 of the Indictment charged Petitioner with Rape in the Third Degree, said allegations occurring on or about August, 2004 through September 5, 2005. Count 8 of the Indictment charged Petitioner with Attempted Rape in the Third Degree, said allegation occurring on or about September 5, 2005.

B.    An indictment is duplicitous if it 'joins in a single count two or more distinct and separate offenses.' *United States v. Shumpert Hood, 210 F*

5

*3d 660, 662 (6th Cir. 2000)*. The vice of duplicity is that a 'jury may find that a defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense.' *Id.* By collapsing separate offenses into a single count, duplicitous indictments 'prevent the jury from convicting on one offense and acquitting on another.' *Id.* Therefore, duplicitous indictments implicate the protections of the Sixth Amendment guarantee of jury unanimity. *Id.* In the case at hand, the grand jury returned an Indictment in violation of Petitioner's Sixth Amendment right to jury unanimity. Since the Indictment was violative of Petitioner's constitutional rights, any proceedings had thereon are also violative of his rights.

3.   Petitioner's sentence for the crimes in which he was convicted, and considering his age and prior record, shocks the conscience and violates the State and Federal Constitutional requirements prohibiting cruel and unusual punishment.

4.   Petitioner's attorney is in possession of a notarized letter from the alleged victim in the underlying file. Petitioner asserts a claim of "actual innocence" in connection with the newly discovered evidence.

   A.   "In an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, . . .a habeas court may grant the writ even in the absence of a showing of cause for procedural default." *Murray v. Carrier 477 US 478, 496 (1986)*. The requirements to establish the requisite probability of innocence are that: 1) Petitioner must first come forward with "new" evidence; and 2) Petitioner must then show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo, 513 US 298, 327 (1995)*. "New evidence" is evidence that was 'not available at trial and could not have been discovered earlier through the exercise of due diligence." *Amrine v. Bowersox, 238 F3d 1023, 1029 (8th Cir.)*

   B.   Although Petitioner's counsel failed in many ways to properly prepare for trial and investigate the underlying matter, the notarized letter in Petitioner's file from the alleged victim is "newly discovered evidence" that most certainly would have led the jury to acquitting Petitioner of all charges in the underlying matter.

Judge Srstka held an evidentiary hearing on October 8, 2010. He issued a written opinion denying Schultz's state habeas Petition on December 29, 2010. Findings of Fact and Conclusions of Law were entered on January 20, 2011. Judge Srstka denied a certificate of probable cause on February 24, 2011. The South Dakota Supreme Court denied a certificate of probable cause on

August 12, 2011. Schultz filed his § 2254 application on September 1, 2011. The issues Schultz raises in his § 2254 application are (verbatim from his application):[2]

1. **Ineffective Assistance of Counsel**

   A. Moving to withdraw on a number of occasions due to not being paid, but ultimately representing Schultz through his jury trial and sentencing;

   B. Failing to thoroughly investigate any possible defenses, including failing to interview the State's material witnesses or other witnesses as directed by Schultz;

   C. Failing to hire an expert to refute the testimony of the State's expert, Dr. Mailloux;

   D. Failing to file any substantial motions challenging the admission of evidence and the admission of expert opinions, including failing to file a motion for a Daubert hearing regarding the testimony of the State's experts;

   E. Failing to subpoena witnesses to testify on behalf of Schultz;

   F. Failing to properly confront and cross-examine the State's witnesses, including failing to elicit bias and motive information;

   G. Failing to keep Schultz fully informed of his case and failing to allow Schultz to review all pertinent information regarding the case, including failing to properly and timely meet with Schultz to prepare for his defense and failing to request a continuance at trial when Schultz experienced problems hearing the proceedings;

   H. Failing to object to improper questions posed of the State's witnesses;

   I. Failing to preserve a proper record for appeal by failing to properly object to improper questions at trial, failing to object to evidence admitted at trial and failing to object to the expert testimony during trial;

   J. Failing to perform proper research regarding the Indictment and thus failing to file a motion to dismiss the indictment as being unconstitutional on its face;

---

[2]The grounds are re numbered and lettered for purposes of this opinion.

7

K. Failing to properly prepare for or conduct the trial on behalf of Schultz due to counsel's failure to file motions, meet with Schultz, subpoena witnesses.

2. Double Jeopardy. I allege ineffective assistance of counsel that my constitutional rights were violated by a duplicitus (sic) indictment that his sentence constitutes cruel and unusual punishment and I claim of actual innocence. This is per habeas corpus.[3]

3. I could not hear what was being said in the court room. In the court room things were being said that I could not hear. My lawyer Jack Der Hagopian asked me two or three times if I was having problem with my hearing I told him yes. I told him I could not hear a word he was saying. He said I should get a hearing aid. I told him that was not my problem. I told him I had a cold in my ears. He maid (sic) no effort to tell the judge of my problem. In my habeas he admitted I could not hear and that he should of asked the judge to postpone trial, he did not. I feel that this was definatly (sic) ineffective asst. per habeas corpus.

4. State had no evidence of rape. No probable cause to charge me. In my habeas hearing Mr. Thomas Hensley asst. State's Attorney told me and the Court that the State convicted me with no evidence or probable cause. This should of been presented to Judge by my attorney Jack Der Hagopian but never was because Jack did not subpoena any witnesses in my behalf. If he had the jury decision would of been different. School got out at 320 basketball practice was 3:30 5 days a week. If Jack would of called Ron Luke to witness. Their (sic) was a 10 minute window she would of had to walk 10 blocks in 10 minutes, be raped, and back to school. Since her case was said to happen before basketball practice, also Jack did not offer to court my time cards which show that I was working until 5:30 each nite (sic). Definatly (sic) ineffective asst.

5. A notarized letter to me, recanting her claim of rape. (REDACTED) my grand daughter accused me of rape to please her father. Her father told her that they would get a million dollars from me she did what she was told. She also told Patty Stork that I did not rape her, which also will accompany this. This should be enough for new trial.

## FACTUAL BACKGROUND[4]

LS was born in September, 1993. When LS was four years old, her mother died in a drowning accident. After LS's mother died, her father tried but was unable to care for her because

---

[3]Schultz later moved to amend his Petition (Doc. 18) to claim that the Indictment was multiplicitous. The Court granted his motion on June 4, 2012. Doc. 23.

[4]The facts are gleaned from the trial transcript and the state court file.

he was an over the road truck driver. LS's father (Terry Schultz) made arrangements for LS to live with her grandfather, Orville Schultz, Schultz's wife and their daughter (AS) in Garretson, South Dakota. LS lived with Schultz's family beginning in approximately September, 2001 until September, 6, 2005.

On Labor Day weekend, 2005, Schultz took his wife and AS to Las Vegas. LS stayed behind and babysat the children of one of Schultz's other daughters, Anne. When Schultz's family returned to town, they went to Anne's house to pick up LS. While LS was holding Anne's baby on the couch in the living room, Schultz entered the room and told LS he was going to give her some thing "this long and this wide" for her birthday and asked if he could "make her a woman" tomorrow. LS took Anne's baby and left the room.

The next day at school, (Tuesday, September 6) LS told one of her friends about the incident. After school, LS went with her friend to the friend's piano lesson at the Lutheran church. LS used the phone at the church to call her father, who was on the road driving his truck. LS told her father that Schultz "touched her in all the wrong places." LS's father (Terry Schultz) instructed LS to go to the park across the street and wait for her ex-step-mother to come pick her up. LS's ex-step-mother came to the park to get LS, and she never returned to Schultz's home.

LS later revealed that Schultz had previously touched her inappropriately. LS recalled at least two specific incidents. The first specific incident occurred when LS was eleven years old. LS was in fifth grade and the incident occurred during the time she had basketball practice in the evenings after school (in the fall). The incident occurred between 3:00 and 5:00 p.m. Only LS and Schultz were in the house. Schultz's wife was at nursing school. Schultz offered LS a cordless phone, internet on her computer, and a later bedtime if she would not tell anyone about the incident. When LS came home from school, Schultz called her into the other room and pulled her onto his lap in his recliner. He put his hand down her shirt underneath her bra and "massaged around" her breasts. She asked him to stop and why he was doing it, but he did not stop. She could not get up and walk away because he was holding her down. He put his other hand down her underwear and put his finger inside her vagina and "pushed it around." She had basketball practice later than night at about 7:00. She told her friends about the incident at basketball practice that night. They told her

to tell her coaches, but she decided not to tell, because she thought they would just make her settle it with her grandparents.

The next specific incident LS recalled occurred on a weekend, a few days after the basketball practice incident. LS came home from a friend's house, and Schultz told her to come over to him. She was exhausted and first asked "why?" but when she went towards him, Schultz got up and pulled her into his lap on his recliner chair. Neither Schultz's wife nor AS were home. Schultz again fondled LS's breasts and inside her vagina. LS could not get away. When Schultz let her go, LS ran into her bedroom. LS testified that Schultz touched her in a similar manner between three and five times. The above two instances, however were the only two specific instances she could recall.

Because LS's father Terry was driving a truck when LS called him to report her grandfather's sexual abuse, Terry's ex-wife Mary came to get LS from the park in Garretson. Mary immediately reported LS's claims to the authorities. Terry Schultz returned home from truck driving as soon as possible (Thursday, September 8) after the phone call from his daughter LS. During the drive home Terry received a phone call from Schultz inquiring about LS's whereabouts. Terry told Schultz LS would not be returning to Schultz's home. Terry eventually filed a civil lawsuit against Schultz, seeking money damages for the benefit of LS. Terry testified he filed the lawsuit because he fears LS will need psychological counseling in the future because of Schultz's sexual abuse.

Upon his return home, Terry accompanied LS to an interview and examination at the Child's Voice. Dr. Edward Mailloux testified at Schultz's criminal trial. He is a pediatrician in Sioux Falls, South Dakota. He is the medical director at the Child's Voice. The Child's Voice is a child abuse evaluation center in Sioux Falls. They evaluate children who are suspected to have been either abused or neglected. He conducted a physical examination of LS on September 8, 2005. Dr. Mailloux's physical examination of LS revealed that her vaginal area and hymen were completely normal. Dr. Mailloux indicated that a digital penetration would not have necessarily left any evidence of injury, especially if the digital penetration occurred more than 48 hours before his examination. Dr. Mailloux explained the chance of detecting an injury after between 24 and 48 hours from the incident have passed is less than five percent.

10

Schultz's wife Gloria explained that when LS did not come home from school on Tuesday, September 6, 2005, she and Schultz became worried. Schultz called Terry, who explained LS would not be returning to the Schultz home because LS felt threatened. Gloria went to work the next day, (Wednesday, September 7, 2005) but when she returned home she continued to ask Schultz why LS would feel threatened in their home. He insisted he did not know, but remained quiet. When Gloria came home from work the following day (Thursday, September 8, 2005) there was a note on the kitchen table from Schultz. The note was received into evidence as EX 4 at trial. It read:

> Gloria, I have been racking my brain as to what I could have said and then it dawned on me. (REDACTED) asked me at Anne's what I was going to get her for her birthday. As a smart ass I said I was going to give her something six inches long. I never changed that statement but I had made my mind up to give her a $20 bill. I guess I am to blame for this and I will take responsibility, but I thought it was harmless. I have quit my job and until I find out what is happening I decided to go to New Orleans and work as a volunteer worker. I am not leaving you. I just need some time to know what I am in for so I can contact an attorney. I can be gotten ahold of by my cell phone but not for a couple of days. I am really sorry but decided you would not be in support of me on this problem, but I always give a smart ass answer and put my mouth in gear. Well I should not have. Terry is very hostile, but gave me a figure he needed, $20,000. I told him I didn't have it. But I do love my family. Bill.

Gloria gave Schultz's letter to the Deputy Sheriff when he arrived at the Schultz home on Thursday, September 8 to inform Gloria of LS's allegations against Schultz and to inquire about Schultz's whereabouts.

After a three day trial, the jury convicted Schultz on two counts of Second Degree Rape. Judge Neiles dismissed the Attempted Rape charges during trial. The jury acquitted Schultz of the final Second Degree Rape charge and its alternative Third Degree Rape Charge. Although Schultz claimed on direct appeal that the Indictment was fatally defective, the South Dakota Supreme Court summarily rejected that claim. Both the South Dakota Circuit Court and the South Dakota Supreme Court also rejected Schultz's habeas claims as outlined above. Schultz's federal habeas corpus claims are now ripe for review.

## ANALYSIS

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The federal courts are constrained, however by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), to exercise only a "limited and deferential review of underlying state court decisions." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005). A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from the Court's precedent.*" Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.C. 1495, 146 L.Ed.2d 389 (2000). A federal habeas court may not issue the writ merely because it concludes the state court applied the clearly established federal law erroneously or incorrectly. *Id.* at 411, 120 S.C. at 1495. "Rather, that application must also be *unreasonable*." *Id.* (emphasis added).

The state court's factual findings are presumed to be correct, and a federal habeas court may not disregard the presumption unless specific statutory exceptions are met. *Thatsaphone v. Weber*, 137 F.3d 1041, 1045 (8th Cir. 1998); 28 U.S.C. § 2254(e). A federal habeas court "may not simply disagree with the state court's factual determinations. Instead it must conclude that the state court's findings lacked even fair support in the record." *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.C. 843, 850, 74 L.Ed.2d 646 (1983).

As a general rule, a petitioner seeking a writ of habeas corpus under § 2254 must first exhaust his available state remedies. 28 U.S.C. § 2254(b)(1)(A). The doctrine of exhaustion requires "as a matter of comity, federal courts should not consider a claim in habeas corpus petition until after the state courts have had an opportunity to act." *Mellott v. Purkett*, 63 F.3d 781, 784 (8th Cir. 1995) *quoting, Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 1202, 71 L.Ed.2d 379 (1982). "The purpose of exhaustion is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and

unfounded litigation obviated before resort to federal court." *Dixon v. Dormire*, 263 F.3d 774, 777 (8th Cir. 2001) (citation omitted). A strong presumption exists to require a prisoner to exhaust his state remedies, and the exhaustion requirement is waived "only in rare cases where exceptional circumstances of peculiar urgency are shown to exist." *Mellott*, 63 F.3d at 785.

The Petitioner bears the burden to show all available state remedies have been exhausted, or that exceptional circumstances exist which warrant waiver of exhaustion. *Carmichael v. White*, 163 F.3d 1044, 1045 (8th Cir. 1998). The federal courts' review of state courts decisions is limited in another way: "the law of this circuit requires that an applicant for a writ of habeas corpus refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent constitutional issue in state court" before it will evaluate a claim. *Ford v. Norris*, 364 F.3d 916, 919 (8th Cir. 2004) (citations omitted, punctuation altered). A petitioner's failure to exhaust in the state courts a claim which does not state a federal constitutional claim, cognizable in federal habeas proceedings, does "not deprive a federal district court of the right to entertain other exhausted claims which do have their roots under the federal constitution." *Martin v. Solem*, 801 F.2d 324, 331 (8th Cir. 1986) (citations omitted). *See also Hall v. Iowa*, 705 F.2d 283, 286 (8th Cir. 1983) ("Nonexhausted state claims included in a federal habeas petition and having no constitutional relevance should not deprive a federal district court of the right to entertain other exhausted claims which do have their roots under the federal Constitution.").

A federal court may not adjudicate the merits of a habeas petition which contains both exhausted and unexhausted claims (a "mixed" petition). *Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 1202, 71 L.Ed.2d 379 (1982). The AEDPA one year statute of limitations, however, often results in claims which are time-barred after being dismissed without prejudice in federal court for failure to exhaust. A "stay and abeyance" procedure may be appropriate if a petitioner presents a petition "mixed" with exhausted and unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 277, 125 S.Ct. 1528, 1535 (2005). No stay and abeyance is necessary, however, if the unexhausted claims are "plainly meritless." *Id.*; 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

13

Finally, when it is obvious a federal habeas petitioner's unexhausted claims would be procedurally barred in state court due to a state-law procedural default, a District Court may forego needless 'judicial ping-pong' and treat those claims now barred by state law as providing no basis for federal habeas relief. The unexhausted claims should be treated as if procedurally defaulted. A petition should be denied with prejudice if there are no state remedies left to exhaust and all of the claims are either meritless or procedurally defaulted. *Ogle v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007).

South Dakota law provides that a habeas petitioner must raise all potential grounds for habeas relief in his first state habeas petition. SDCL § 21-27-16.1 provides:

**21-27-16.1 Waiver of grounds for relief not raised in application.**
All grounds for relief available to petitioner under this chapter shall be raised in his original, supplemental or amended application. Any ground not raised, finally adjudicated or knowingly and understandingly waived in the proceedings resulting in his conviction or sentence or in any other proceeding that the applicant has taken to secure relief from his conviction, or sentence, may not be the basis for a subsequent application, unless the court finds ground for relief asserted which for reasonable cause were omitted or inadequately raised in the original, supplemental or amended application.

Procedural default of a claim under state law constitutes an adequate and independent state law ground that precludes federal review unless the prisoner can demonstrate cause for the default and actual prejudice, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Owen v. Weber*, 2010 WL 4117147 (D.S.D.) *citing Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Claims which have not been raised in either Petitioner's direct appeal or state habeas application are procedurally barred. *Whitepipe v .Weber*, 536 F.Supp.2d 1070, 1100 (D.S.D. 2007). "This procedural bar provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Welch v. Lund*, 616 F.3d 756, 760 (8th Cir. 2010) (citation omitted, punctuation altered).

These general principles of law are applied in more detail to the grounds raised in Schultz's § 2254 habeas corpus petition:

1.    **Preliminary Matters**

    A.    **Schultz's Proposed Amendments.**

Schultz filed his § 2254 Petition on September 1, 2011. At the request of the Court he filed a missing page on September 12, 2011. Since then, Schultz has filed numerous supplements and/or "motions." Most of the supplements/motions have merely provided additional authority, clarification, or reiteration for Schultz's original claims. A few of Schultz's supplements or "motions," however deserve mention because they attempt to raise claims which are new or different from the claims which Schultz raised in his original federal § 2254 Petition and from those claims which he raised in the state habeas proceedings.

Specifically, in Doc. 28 Schultz claims that the charges against him should have been dismissed because his *Miranda* rights were violated. In Doc. 33, Schultz moves to amend his Petition pursuant to Rule 15 to add claims that (1) the prosecution wrongfully withheld exculpatory evidence in the form of Dr. Mailloux's testimony; and (2) the charges against him should have been dismissed because the state violated the 180 day rule. Schultz will not be allowed to add these claims to his federal § 2254 habeas Petition for a couple of reasons.

First, these new claims are untimely. The *Miranda* claim was filed on November 13, 2012, over a year after Schultz originally filed his § 2254 Petition. The exculpatory evidence and 180 day rule claims were filed on March 8, 2013, approximately a year and a half after he filed his § 2254 Petition. 28 U.S.C. § 2244(d) provides:

> **(1)**    A 1-year statute of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>     **(A)**    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     **(B)**    the date on which the impediment to filing an application created by State action in violation

of the Constitution or laws of the United
States is removed, if the applicant was
prevented from filing such by State action;

**(C)**    the date on which the constitutional right
asserted was initially recognized  by the
Supreme Court if the right has been newly
recognized by the Supreme Court and made
retroactively applicable to cases on collateral
review; or

**(D)**    the date on which the factual predicate of the
claim or claims presented could have been
discovered through the exercise of due
diligence.

**(2)**    The time during which a properly filed application for State
post-conviction or other collateral review with respect to the
pertinent judgment or claim is pending shall not be counted
toward any period of limitation under this subsection.

Schultz's instant federal § 2254 habeas Petition is governed by the Antiterrorism and
Effective Death Penalty Act (AEDPA), which imposes a one-year statute of limitations for filing
federal habeas petitions. 28 U.S.C. § 2244(d)(1); *Beery v. Ault*, 312 F.3d 948, 949 (8th Cir. 2003).
The federal limitations period runs from the date on which Schultz's state judgment became final
by the conclusion of direct review or the expiration of time for seeking direct review. *Id.* By
Supreme Court rule, a petitioner has 90 days from the date of entry of judgment in a state court of
last resort to petition for certiorari. *Id.*, Sup. Ct. R. 13. The statute of limitations is tolled, however,
while "a properly filed application for State post-conviction review is pending." *Id.;* § 2244(d)(2).
*See generally, Painter v. State of Iowa*, 247 F.3d 1255, 1256 (8th Cir. 2001) ("a review of our cases
makes clear, however, that the time between the date that direct review of a conviction is completed
and the date that an application for state post-conviction relief is filed counts against the one-year
period."). *See also Curtiss v. Mount Pleasant Correctional Facility*, 338 F.3d 851, 853 (rejecting
the suggestion that the federal filing deadline had not expired because state petition was timely filed
according to state law, and federal petition was filed within one year after state statute of limitations
had expired); *Jackson v. Ault*, 452 F.3d 734, 735 (8th Cir. 2006) ("It does not matter that

[petitioner's] . . .state post conviction relief application was timely filed under [state] law. The one year AEDPA time limit for federal habeas filing cannot be tolled after it has expired.").

The South Dakota Supreme Court affirmed Schultz's conviction on September 2, 2008. His conviction became final ninety days later, on December 1, 2008. He did not file his state habeas action until August 12, 2009. Two hundred fifty-four days elapsed between the date Schultz's conviction became final and the date he filed his state habeas petition. His state habeas action remained pending until August 12, 2011, when the South Dakota Supreme Court denied a Certificate of Probable Cause. Schultz filed his federal habeas petition twenty days later, on September 1, 2011. Therefore, at the time he filed his federal habeas petition, 274 out of the 365 day statute of limitations had elapsed. In other words, 91 days remained. The statute of limitations for any further claims expired, therefore, 91 days from September 1, 2011, or on November 30, 2011, long before Schultz filed his new claims. "Those claims are untimely unless they relate back to the filing date of the original claims under Rule 15(c)(2) of the Federal Rules of Civil Procedure. An amended pleading relates back if the claims asserted arose out of the same conduct, transaction, or occurrence." *McKay v. Purkett*, 255 F.3d 660 (8th Cir. 2001). Schultz's proposed amendments do not relate back because they do not arise out of the same conduct, transaction or occurrence as any of his original claims.[5]

Even if they had been timely filed, the new claims Schultz attempts to raise are procedurally defaulted. Schultz did not raise these claims in his direct appeal or the state habeas proceedings. He did not argue at any stage of the state court proceedings that the criminal charges against him should be dismissed because his *Miranda* rights were violated, because the state violated the 180 day rule, or because the prosecutor withheld exculpatory evidence by presenting Dr. Mailloux's testimony. As explained above, South Dakota law (SDCL 21-27-16.1) requires that if all possible claims are not brought in a habeas petitioner's initial state habeas petition, they are waived. Schultz's new claims are therefore procedurally defaulted unless it appears from the record that

---

[5]The Eighth Circuit has clarified it is not enough that the claim arises out of the habeas petitioner's criminal trial, conviction or sentence. *United States v. Hernandez*, 436 F.3d 851, 857 (8th Cir. 2006). Instead, "in order for the claims in an amended motion to relate back . . they must be of the same time and type as those in the original motion such that they arise from the same core set of operative facts." *Id.* (punctuation altered).

Schultz can show (1) cause and prejudice or (2) that a failure to consider the claim will result in a fundamental miscarriage in justice. *Owen v. Weber*, 2010 WL 4117147 (D.S.D.) *citing Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To show cause, Schultz must show that some external factor impeded his efforts to comply with the state's procedural rule–in other words, to present this claim to the state court in either his direct appeal or his state habeas claim. A cause "external" to the Schultz is "something that cannot be fairly attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991). An example is a factual or legal basis that was "not reasonably available. . ." *Id.* Schultz has not shown that he has obtained any new information about any of these subjects that was not available to him during during his state court proceedings. Schultz has not shown cause in this instance and has advanced no plausible arguments with regard to cause for or prejudice from procedural default of this claims. Accordingly, they are defaulted. *Cole v. Roper*, 623 F.3d 1183, 1192 (8th Cir. 2010). " If a prisoner fails to demonstrate cause, the court need not address prejudice." *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007) (citations omitted).

Schultz has likewise not shown that a failure to consider his claims will result in a fundamental miscarriage of justice. Although Schultz has consistently claimed he is innocent of these crimes, that is not enough. To meet this exception to the procedural default rule "a habeas petitioner must present *new* evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Ogelsby v. Bowersox*, 592 F.3d 922, 926 (8th Cir. 2010) (citation omitted, emphasis added). "To be credible, such a claim of actual innocence requires petitioner to support his allegations of constitutional error with *new* reliable evidence . . ." *McCoy v. Norris*, 125 F.3d 1186, 1190 (8th Cir. 1997) (emphasis in original).[6] The Courts have "squarely rejected the notion that a prisoner may receive a writ simply because he claims he is innocent." *Burton v. Dormire*, 295 F.3d 839, 848 (8th Cir. 2002).

---

[6]Schultz attempted to present "new evidence" during his state habeas hearing but the "evidence" was rejected by Judge Srstka as hearsay. Judge Srstka's ruling is discussed later in this Report and Recommendation.

## B. Schultz's Motion for Evidentiary Hearing

Next, Schultz has filed a Motion for Evidentiary Hearing (Doc. 31). 28 U.S.C. § 2254(e)(2)(B) provides:

> (2) If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
> \*\*\*
>> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

Additionally the Rules Governing Habeas Corpus Cases Under Section 2254, Rule 8 states:

> **Rule 8: Evidentiary Hearing**
> **(a) Determining Whether to Hold a Hearing**. If the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

"Under § 2254 an evidentiary hearing is unnecessary where the petitioner's allegations, even if true, fail to state a claim upon which habeas relief can be granted. Dismissal of a petition without a hearing is also proper if there is no dispute as to the facts, or if the dispute can be resolved on the basis of the record." *Amos v. State of Minnesota*, 849 F.2d 1070, 1072 (8th Cir. 1988). In this case, the Court has been provided with the court files and transcripts from the underlying criminal trial and the state habeas proceedings. Any disputes can be resolved on the basis of the record as it exists. Schultz's Motion for Evidentiary Hearing (Doc. 31) should be DENIED.


## 2. Schultz's § 2254 Habeas Claims

### First Claim For Relief: Ineffective Assistance of Counsel.

Although Schultz's several ineffective assistance claims are diverse the same principles of law apply to all of them. To establish an ineffective assistance of counsel claim, Petitioner must (1) establish counsel's representation fell below an objective standard of reasonableness and (2) show the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To demonstrate prejudice, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694, 104 S.C. at 2052. The Court must begin by

presuming trial counsel was effective, and strategic choices are entitled to great deference. *Boyd v. Minnesota*, 274 F.3d 497, 502 (8th Cir. 2001). Finally, the Eighth Circuit has noted federal review of ineffective assistance claims in § 2254 petitions is particularly deferential: "Our review under 28 U.S.C. § 2254 of a state court's application of *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) is twice deferential: we apply a highly deferential review to the state court decision; the state court, in turn, is highly deferential to the judgments of trial counsel." *Nooner v. Norris*, 402 F.3d 801, 808 (8th Cir. 2005) *cert. den.* 126 S.Ct. 2037, 164 L.Ed.2d 794 (2006). It is with these standards in mind that Schultz's various ineffective assistance claims are reviewed.[7]

### A. Moving to withdraw on a number of occasions due to not being paid, but ultimately representing Schultz through his jury trial and sentencing;

Although this claim was made at the state court level, no evidence was presented to the state Circuit Court regarding this claim during the state habeas proceedings. Judge Srstka made no factual findings nor any conclusions of law regarding this claim. Likewise, Schultz has presented no substantive arguments to this Court regarding how his trial counsel's motion to withdraw, or in the alternative for a continuance, made during the course of his criminal trial,[8] prejudiced the quality of the legal representation Schultz ultimately received.[9] This claim is therefore deemed abandoned. *Jones v. Delo*, 56 F.3d 878, 882 (8th Cir. 1995) (failure to present evidence in support of claims results in their abandonment). It is therefore respectfully recommended to the District Court that this portion of Schultz's First Claim for Relief be DENIED.

---

[7]As Judge Srstka did, Schultz's ineffective assistance claims will be grouped together according to subject matter.

[8]Schultz was unable to pay his lawyers for a period of time during the pendency of his criminal proceedings because he was simultaneously involved in a divorce proceeding and his assets were temporarily frozen by order of the divorce court. *See* Motion Hearing Transcript dated February 3, 2006.

[9]Trial counsel did not ultimately withdraw. He represented Schultz through the sentencing phase of the criminal trial. Different counsel appeared for purposes of Schultz's direct appeal and state habeas proceedings.

**B.** Failing to thoroughly investigate any possible defenses, including failing to interview the State's material witnesses or other witnesses as directed by Schultz;

**E.** Failing to subpoena witnesses to testify on behalf of Schultz;

**F.** Failing to properly confront and cross-examine the State's witnesses, including failing to elicit bias and motive information;

**H.** Failing to object to improper questions posed of the State's witnesses;

In assessing ineffective assistance claims under the *Strickland* standard, "[t]he decision not to call witnesses is a virtually unchallengeable decision of trial strategy." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) (citations omitted, punctuation altered). The habeas court must avoid "the distorting effects of hindsight and try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time." *Id.* (citations omitted, punctuation altered). Likewise, the choice to cross-examine state witnesses rather than recall them as defense witnesses is not an unreasonable trial strategy under *Strickland. Williams v. Bowersox,* 340 F.3d 667, 669 (8th Cir. 2003).

During the state habeas hearing, Schultz explained which witnesses he believed trial counsel should have interviewed and/or called to testify on Schultz's behalf and the evidence he believed those witnesses would have offered at trial. Schultz's trial counsel also testified during the state habeas proceedings and explained why he decided against calling some of the witnesses on Schultz's proposed witness list. Counsel explained there were prior claims of sexual contact and/or other bad acts by Schultz which he wished to keep out of evidence, so his trial strategy was to avoid opening the door to that information by not calling character evidence witnesses. Counsel also explained that some of the witnesses Schultz wished to call (the victim ( LS) Terry and Mary Schultz) were called by the state in its case-in-chief, so he elicited credibility and bias information from those witnesses on cross-examination.

In his written decision, Judge Srstka carefully detailed each witness Schultz thought would have been helpful to his case. Judge Srstka explained that in some instances (the Police Chief Steve Kirton and Elsa Lechner, Schultz's long time paramour, for example), the proposed witness would

have been purely a character witness. Judge Srstka found "it was most likely beneficial to Schultz to avoid character or other acts evidence." Also, although Schultz claimed his counsel failed to object to "improper" questions posed by the prosecutor, Judge Srstka noted Schultz did not identify any specific improper questions or objections which should have been made. Memorandum Opinion at 9.

> "[T]he pertinent question is whether counsel's failure to object was both objectively unreasonable and prejudicial. . . .To breach the unreasonableness threshold, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice. Conversely, any single failure to object . . .cannot be said to have been error.

*Schauer v. McKee*, 401 Fed. Appx. 97, 101 (6th Cir. 2010) (citations omitted, punctuation altered). Because Schultz did not identify questions to which objections should have been made, he cannot show prejudice under *Strickland*.

Schultz also claimed trial counsel should have interviewed LS's basketball coach and her teammates to determine whether her claim about the timing of one of the incidents could have been impeached. Judge Srstka found that trial counsel's strategy not to call these individuals as witnesses was not deficient, because trial counsel testified Schultz told him before trial that basketball practice times were staggered based upon which grade the girls were in at the time, and that he (Schultz) had been alone in the home with LS and AS on many occasions while the other was at practice. HT at 116-118. Schultz testified at the state habeas hearing, however, (HT at 24) that he was hardly ever in the house when LS was there because between his two jobs he was working sixteen to eighteen hour days during the time frame LS alleged the incidents occurred. During the state habeas hearing, however, the prosecutor noted that the time cards produced by Schultz for purposes of the state habeas hearing did not support Schultz's claim. HT at 42. Matters of credibility are for the trial court to determine. *Haley v. Armontrout*, 924 F.2d 735, 739 (8th Cir. 1991). A trial court's credibility determination will be upheld if it finds even fair support in the record. *Cox v. Lockhart*, 970 F.2d 448, 452 (8th Cir. 1992). Judge Srstka found that counsel's failure to call the basketball coach or LS's teammates as witnesses was not deficient performance and Schultz was not prejudiced by the failure to call them as witnesses under *Strickland*.

"[A] meaningful opportunity to present a complete defense does not translate into the right of a defendant to present any evidence he may deem important to his defense." *Strickland v. Lee*, 471 F.Supp.2d 557, 617 (W.D. N.C. 2007). Instead, to prove prejudice, the Petitioner must show that the uncalled witnesses would have testified in his defense, that their testimony would have been favorable, and that their testimony "probably would have changed the outcome of the trial." *See, Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990); *Stewart v. Nix*, 31 F.3d 741, 31 F.3d 741, 744 (8th Cir. 1994). The trial transcript and the habeas transcript have been carefully reviewed. Trial counsel's decisions about which witnesses to call at trial fell within the boundaries of reasonable trial strategy. Schultz has failed to show that but for his trial counsel's claimed errors in failing to interview or call specified witnesses at trial, the outcome of the proceedings would have been different. The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Schultz's First Claim for Relief be DENIED.

      **C.**    **Failing to hire an expert to refute the testimony of the State's expert, Dr. Mailloux;**

      **D.**    **Failing to file any substantial motions challenging the admission of evidence and the admission of expert opinions, including failing to file a motion for a Daubert hearing regarding the testimony of the State's experts;**

      **I.**    **Failing to preserve a proper record for appeal by failing to properly object to improper questions at trial, failing to object to evidence admitted at trial and failing to object to the expert testimony during trial;**

The next category of Schultz's ineffective assistance claims focuses primarily on the manner in which trial counsel handled the trial testimony of the state's expert, Dr. Mailloux. Schultz has attached the Child's Voice report to his papers. *See e.g.* Doc. 1, EX 1 (Sealed). The report was never introduced into evidence at trial and was not seen by the jury. During a pre-trial hearing[10] trial counsel and the prosecutor agreed that because of LS's age, the Child's Voice interviewer (Colleen Brazil) would not be allowed to testify about the substance of LS's interview. In fact, Ms. Brazil did

---

[10]*See* Motion Hearing transcript dated February 3, 2006.

not testify at all. The prosecutor conceded the interview portion of the Child's Voice examination was hearsay, and that LS herself would be required to testify to allow the jury to determine the credibility of her claims. *See* Motion Hearing transcript dated February 3, 2006. Finally, although Dr. Mailloux's report includes the conclusion of "probable child sexual abuse" in the ASSESSMENT section, his trial testimony did not include that conclusion. *See* Trial Transcript, p. 17-18. Dr. Mailloux merely testified that although LS's physical exam was entirely normal, physical findings would have been detectible only if the incident had occurred within 24-48 hours of the examination. During the state habeas hearing, Schultz did not identify any of Dr. Mailloux's trial testimony which he believed should have been inadmissible.

During the state habeas hearing, Schultz testified that he left the decision about whether to hire an expert to counsel. Although he claimed trial counsel should have hired an expert to contradict Dr. Mailloux's testimony, Schultz conceded during the habeas hearing that he had "no idea" what type of expert should have been retained. *See* Habeas Transcript, p. 47. Trial counsel testified during the state habeas hearing that he considered retaining a "psychologist type" expert to testify about how a child might come to fabricate a claim of sexual abuse. Habeas Transcript, p. 96. Counsel explained, however that Schultz was against hiring such an expert because of the expense, because he (Schultz) believed it was "obvious" LS was a liar, and because there were plenty of other ways to impeach her credibility without employing an expert. Counsel explained he did not believe there was any legitimate basis to file a *Daubert* motion to preclude Dr. Mailloux's trial testimony, but that he was able to establish through cross-examination that there was no physical evidence to support LS's claims.

Judge Srstka considered Schultz's claims regarding cross-examination of Dr. Mailloux and trial counsel's failure to hire a defense expert, but found that none of the deficiencies alleged by Schultz undermined confidence in the outcome of the case. Schultz's mere speculation about how an expert might have testified at trial, or how an expert could have improved his odds of acquittal are insufficient to establish prejudice. *Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001). On the expert witness issue, speculation is all that Schultz offered at the state habeas hearing and all that he offers in his § 2254 papers. The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully

recommended to the District Court that this portion of Schultz's First Claim for Relief be DENIED.

> **G.** **Failing to keep Schultz fully informed of his case and failing to allow Schultz to review all pertinent information regarding the case, including failing to properly and timely meet with Schultz to prepare for his defense and failing to request a continuance at trial when Schultz experienced problems hearing the proceedings;**

This portion of Schultz's ineffective assistance claim is twofold: he asserts (1) trial counsel did not spend enough time meeting with him or working on his case before trial and (2) his due process rights were violated by trial counsel's failure to request a continuance when, on the first day of trial, Schultz developed a sudden hearing loss.

During the state habeas hearing, Schultz claimed trial counsel met with him "five or six" times. HT 44. Some meetings were fifteen minutes, while others were forty-five minutes. *Id.* Trial counsel, on the other hand, testified he spent more time with Schultz than with any other client in his career. HT 89. His records showed at least sixteen meetings, in addition to phone calls and in-court proceedings. HT at 90. Judge Srstka considered Schultz's claims but found "Schultz has not met his heavy burden of establishing his trial counsel's performance was deficient." Memorandum Opinion at 10. Again, matters of credibility are for the trial court to determine. *Haley v. Armontrout*, 924 F.2d 735, 739 (8th Cir. 1991). A trial court's credibility determination will be upheld if it finds even fair support in the record. *Cox v. Lockhart*, 970 F.2d 448, 452 (8th Cir. 1992).

At the state habeas hearing, Schultz explained that during the time of his criminal trial he had been ordered to stay away from young children. Because of the Order, he slept in his van and "caught a cold in [his] ears so bad that [he] couldn't hear." HT at 28. Schultz first he claimed he could hear some things but not others during the trial, depending on the pitch of the person's voice. HT at 28. During his habeas testimony, however, his hearing loss claim evolved. He "couldn't hardly hear anything at all." HT 29. He "couldn't hear nothing." HT 29. He conceded, however, that he did not alert the trial Judge that he could not hear. HT 48. During the state habeas hearing Schultz commented on what certain witnesses said at trial, but claimed he gained that information

later from "people that were at the trial at the time." HT at 52. Schultz denied he had read the trial transcripts. HT 53. He denied his sources told him everything about his trial counsel's examination of the various witnesses. *Id.*

Trial counsel testified at the habeas hearing that when he tried to whisper to Schultz during the first day of trial Schultz did not respond. Counsel first thought Schultz was just nervous. HT 102. By the second day it became apparent to counsel that Schultz could not hear him at counsel table in the courtroom during the trial. *Id.* Counsel testified that Schultz told him during the trial he was having trouble hearing, but it was not until after the trial that Schultz claimed he'd not been able to hear anything. *Id.* Counsel testified Schultz could converse with him during the trial when they were not in the courtroom sitting at counsel table. HT 102-03.

Judge Srstka found that Schultz's claim of complete hearing loss during the trial was not credible.[11] Memorandum Opinion at 10. Judge Srstka found that although Schultz and his counsel may not have been able to whisper to each other at counsel table during trial, Schultz was able to hear and converse when using a normal tone of voice during the trial. Finally, Judge Srstka found that, even if Schultz did sustain some temporary hearing loss during the trial, he failed to tell counsel the extent of his alleged hearing loss until the after the trial was over. Given these factual findings, Judge Srstka determined Schultz "has not shown his counsel was deficient for failing to request a continuance or make the court aware of Schultz's alleged hearing difficulties when Schultz failed to make his attorney fully aware of the situation." Memorandum Opinion at 10.

---

[11]In his § 2254 papers, Schultz alleges Judge Srstka "ruled in his Answers to Evidentiary hearing that [his] hearing loss was because of old age." *See* Doc. 30. Schultz misinterprets Judge Srstka's statements. In the course of discussing Schultz's due process claim, Judge Srstka reiterated the non-credibility of Schultz's assertion that he heard absolutely nothing during the criminal trial. Judge Srstka stated, "As I found above, Schultz's claims regarding this sudden and unexplained total hearing loss on the eve of trial lack credibility. Given Schultz's age, it is credible that he may have some difficulty hearing his counsel's whispering to him at counsel table, but Schultz did not notify the trial court or his own counsel of his alleged inability to hear the entire trial." Contrary to Schultz's interpretation, therefore, Judge Srstka did not attribute Schultz's sudden and allegedly complete hearing loss to old age.

This Court has thoroughly reviewed the state court records, the trial transcript and the state habeas transcript. The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Schultz's First Claim for Relief be DENIED.

### J.    Failing to perform proper research regarding the Indictment and thus failing to file a motion to dismiss the indictment as being unconstitutional on its face;

On direct appeal, Schultz asserted the Indictment was constitutionally defective. Both the South Dakota Supreme Court and Judge Srstka rejected Schultz's claim. Schultz theorized the Indictment was drafted in a manner which was not sufficiently specific.

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of a charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. . . .It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.

*Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974) (citations omitted, punctuation altered).

Schultz now claims his trial counsel was ineffective for failing to move to dismiss the Indictment as duplicitous and/or multiplicitous.[12] Judge Srstka did not directly address this claim in the context of Schultz's ineffective assistance claim, but stated "as to the Indictment . . .[a]s discussed below, Schultz has not shown the indictment was unconstitutional on its face." Schultz cannot prove either prong of the *Strickland* standard based upon his theory that counsel should have pursued a motion that was doomed to fail. "[E]ven under the constitutional ineffectiveness standard, to impose on appointed counsel a duty to raise every colorable claim suggested by a client would disserve the very goal of vigorous and effective advocacy. . . a defendant is not entitled to an attorney

---

[12]In his state proceedings, Schultz claimed the Indictment was unconstitutional on its face because it was non-specific. In these proceedings, he originally claimed the Indictment was unconstitutional on its face because it was duplicitous. He later amended his § 2254 petition to allege the Indictment was multiplicitous.

27

who will raise every non-frivolous claim he wishes to pursue." *Lamp v. State of Iowa*, 122 F.3d 1100, 1105-06 (8th Cir. 1997) (citations omitted, punctuation altered).

The Indictment in Schultz's case contained three allegations of second degree rape, three allegations of third degree rape, and two allegations of attempted rape. The attempted rape allegations were dismissed during trial. The second and third degree rape allegations were in the alternative to each other, but each count alleged the same broad range of dates (August, 2004 through September 5, 2005). Schultz contends, therefore, that the possibility existed that the jury may have convicted without unanimity. Schultz fails to acknowledge, however, that Judge Neiles gave the following Jury Instructions:

Instruction No. 9:  A separate offense is charged in each count of the indictment. You must separately consider each count and the evidence which applies to it. All twelve jurors must agree to any verdict as to any individual count of the indictment.

Instruction No. 12:  The State has brought both Rape in the Second Degree charges, as found in Counts 1,2, and 3, and Rape in the Third Degree charges, as found in Counts 5,6, and 7. These charges are intended to be in the alternative. That is, with respect to a particular allegation, the State is charging that the defendant committed Rape in the Second Degree, but if the jury does not unanimously find beyond a reasonable doubt that the defendant is guilty of Rape in the Second Degree, the jury should go on to consider whether the evidence is sufficient to convict the defendant on the alternative charge of Rape in the Third Degree. Count 5 should be considered in the alternative to Count 1. Count 6 should be considered in the alternative to Count 2, and Count 7 should be considered in the alternative to Count 3. As noted earlier, Counts 4 and 8 were dismissed by the Court, and those charges are not to be considered further by the Jury.

Instruction No. 13:  Although the Indictment does not identify or distinguish the separate allegations charged by the State, the Jury must attach the counts of the indictment to a particular incident described by the witnesses. For instance, Counts 1 and 5 apply to Allegation 1, the allegation described as occurring before a basketball practice. Counts 2 and 6 apply to Allegation 2, the allegations described as occurring a few days later after LS spent the day running around with friends. Counts 3 and 7 apply to Allegation 3, while not identified by a specific date or related incident, is based upon the alleged victim's claim of other incidents of sexual penetration by the defendant, not included in the other counts of this indictment.

An indictment is duplicitous if a single count charges more than one offense. An indictment is multiplicitous if a single offense is charged in more than one count. *United States v. Higgins*, 710 F.3d 839, 843 fn. 5 (8th Cir. 2013). "Duplicity is problematic because it might lead the jury to convict without unanimous agreement on the defendant's guilt with respect to a particular offense." *United States v. Stegmeier*, 701 F.3d 574, 581 (8th Cir. 2012). "The principal danger that the multiplicity doctrine addresses is the risk that a defendant might receive multiple punishments for a single offense." *United States v. Roy*, 408 F.3d 484, 492 (8th Cir. 2005) (citations omitted, punctuation altered). It has been consistently recognized, however, that both duplicity and multiplicity can be remedied by curative jury instructions. *Stegmeier, id.* at p. 581 fn. 5 ("the risk of truly duplicitous charged may be cured by a limiting instruction . . ."); *Roy, id.* at p. 491 ("multiplicitous indictments may be saved at the trial stage if the . . .court submits an appropriate instruction to the jury."). In this instance, the Indictment was not unconstitutional on its face, nor was it prejudicially duplicitous or multiplicitous.

This Court has thoroughly reviewed the state court record, the trial transcript and the state habeas transcript. The state courts' factual findings are fairly supported by the record, and they did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that this portion of Schultz's First Claim for Relief be DENIED.

> **K.**     **Failing to properly prepare for on conduct the trial on behalf of Schultz due to counsel's failure to file motions, meet with Schultz, subpoena witnesses.**

This final ineffective assistance claim does not state a new or different claim, but instead appears to merely summarize and reiterate Schultz's other ineffective assistance claims. For the reasons explained above, is therefore respectfully recommended to the District Court that this portion of Petitioner's First Claim for Relief be DENIED.

**Second Claim for Relief: Double Jeopardy. I allege ineffective assistance of counsel that my constitutional rights were violated by a duplicitus (sic) indictment that his sentence constitutes cruel and unusual punishment and I claim of actual innocence. This is per habeas corpus.**[13]

This claim for relief combines several allegations but the cruel and unusual punishment claim is the only one not encompassed within another claim for relief.[14] As such, it is the only one addressed in this section.

Schultz was convicted on two counts of Second Degree Rape in violation of SDCL 22-22-1(2). Second Degree Rape is a Class 1 felony pursuant to SDCL 22-22-1. The maximum penalty for a Class 1 Felony in South Dakota is 50 years in prison. SDCL 22-6-1(4). Because Schultz was convicted on two Second Degree Rape charges, Judge Neiles could have imposed two consecutive 50 year prison terms, for a total term of imprisonment of 100 years. Schultz received two concurrent 25 year terms, for a total term of imprisonment of 25 years.

To prove his sentence violates the Constitution, Schultz must show it is grossly disproportionate to the crime. *Lockyer v. Andrade*, 538 U.S. 63, 72, 123 S.Ct. 1166, 1173, 155 L.Ed.2d 144 (2003). The United States Supreme Court has cautioned that the grossly disproportionate principle is applicable only in the "exceedingly rare and extreme" case. *Id.* 538 U.S. at 73, 123 S.Ct. at 1173 (citations omitted, punctuation altered). *See also Ramos v. Weber*, 303 F.3d 934, 937 (8th Cir. 2002). In determining whether a sentence is grossly disproportionate, the gravity of the offense is compared to the harshness of the penalty imposed. *Id.* In evaluating the gravity of the offense, the Court evaluates the harm caused or threatened to the victim or society and the defendant's culpability or degree of involvement. *Id.* Culpability is determined by the Petitioner's intent and motive in committing the crime. *Id.*

---

[13]Schultz later moved to amend his Petition (Doc. 18) to claim that the Indictment was multiplicitous. The Court granted his motion on June 4, 2012. Doc. 23.

[14]The validity of the Indictment and whether counsel was ineffective for failing to move to dismiss has already been discussed above. Schultz's actual innocence claim and the sufficiency of the evidence he attempted to introduce at both the state habeas level and to this Court are discussed below in Schultz's Fifth Ground for Relief.

At the sentencing hearing, Judge Neiles commented that the jury had spoken, and by his actions Schultz had also spoken.[15] Judge Neiles also commented that given Schultz's age, two concurrent 25 year prison terms was a tough enough penitentiary sentence even though the state requested two consecutive 25 year prison terms. Sentencing transcript at 12. The jury, by its verdict, found beyond a reasonable doubt that Schultz committed two counts of Second Degree Rape. When Judge Neiles imposed two concurrent 25 year sentences, he explained that he had considered "all the facts and circumstances" in the case as well as the state's request for consecutive sentences, which he ultimately denied. Sentencing TR at 12-13.

"Legislatures are entitled to wide latitude in prescribing punishments." *Ramos,* 303 F.3d at 938. Schultz was not given the maximum sentence, even though the victim was his granddaughter and the state requested consecutive sentences. Schultz's sentence is one-fourth the statutory maximum he could have received and one-half what the state requested. Because his sentence is not too severe given his crime, it is unnecessary to compare it to those of other offenders or other jurisdictions. *Id.*

The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that Schultz's Second Claim for Relief be DENIED.

> **Third Claim For Relief: I could not hear what was being said in the court room. In the court room things were being said that I could not hear. My lawyer Jack Der Hagopian asked me two or three times if I was having problem with my hearing I told him yes. I told him I could not hear a word he was saying. He said I should get a hearing aid. I told him that was not my problem. I told him I had a cold in my ears. He maid (sic) no effort to tell the judge of my problem. In my habeas he admitted I could not hear and that he should of asked the judge to postpone trial, he did not. I feel that this was definatly (sic) ineffective asst. per habeas corpus.**

This claim for relief appears to be a reiteration of Section (G) of Schultz's first claim for relief. For the same reasons explained in that section, it is respectfully recommended to the District Court that Schultz's Third Claim for Relief be DENIED.

---

[15]Schultz absconded after the trial and was not present for the verdict. He was apprehended in Las Vegas.

**Fourth Claim for Relief: State had no evidence of rape. No probable cause to charge me. In my habeas hearing Mr. Thomas Hensley asst. State's Attorney told me and the Court that the State convicted me with no evidence or probable cause. This should of been presented to Judge by my attorney Jack Der Hagopian but never was because Jack did not subpoena any witnesses in my behalf. If he had the jury decision would of been different. School got out at 320 basketball practice was 3:30 5 days a week. If Jack would of called Ron Luke to witness. Their (sic) was a 10 minute window she would of had to walk 10 blocks in 10 minutes, be raped, and back to school. Since her case was said to happen before basketball practice, also Jack did not offer to court my time cards which show that I was working until 5:30 each nite (sic). Definatly (sic) ineffective asst.**

The allegations Schultz asserts in this claim for relief appear to be reiterations of one of his time-barred claims, as well as the ineffective assistance allegations made in Section E of his first claim for relief. For the same reasons explained in those sections, it is respectfully recommended to the District Court that Petitioner's Fourth Claim for Relief be DENIED.

**Fifth Claim for Relief: A notarized letter to me, recanting her claim of rape. (REDACTED) my grand daughter accused me of rape to please her father. Her father told her that they would get a million dollars from me she did what she was told. She also told Patty Stork that I did not rape her, which also will accompany this. This should be enough for new trial.**

In his final claim for relief, Schultz asserts that he is actually innocent. The basis of this claim is Schultz's assertion that the victim, LS, has now recanted her allegations against him. Schultz attempted to make this claim at the state court level, but Judge Srstka rejected the evidence Schultz proffered because it was hearsay. HT at 36. Schultz offers the same evidence in his § 2254 Petition (a letter purportedly written by the victim, LS) along with a photocopy of the front of a father's day card Schultz claims he received from LS in 2009. Schultz attached these items to his initial § 2254 Petition as attachment #1 (sealed) and to Doc. 31 as sealed attachment #1. In addition, Schultz has submitted to this Court the following:

- A notarized letter from Schultz's daughter (Patty Stork), attached to his initial § 2254 Petition as attachment #1 (sealed). A photo copy of a similar letter from Patty Stork is attached to Doc. 31 as sealed attachment # 1;
- A photocopy of a letter purportedly from KP–Doc. 20;
- A photocopy of a letter purportedly from EH–Doc. 20;
- A letter purportedly from AS–Doc. 21. An unsigned photocopy of the same letter is attached to Doc. 31 as sealed attachment # 1.
- A notarized letter from Sandy Lujan, attached to Doc. 31 as sealed attachment #1.
- A photocopy of an undated, typewritten letter purportedly from "Terry" to "Dad."

32

- Photocopies of several undated letters purportedly from "Valerie" to "Patty" attached to Doc. 31 as sealed attachment # 3.

LS did not appear voluntarily nor did Schultz subpoena her to testify at his state habeas hearing. He did not offer LS's affidavit. At the state habeas hearing, Schultz testified about a letter which was purportedly written by LS, recanting her claims against him. Schultz claimed the letter was included in a card he received from LS during his incarceration.[16] The card says "# 1 Grandpa." The postmark on the envelope appears to be dated June 24, 2009. The letter is typewritten, but the notarized signature is handwritten. The handwriting for signature inside the card and for the signature on the "recanting letter" however, are very different.[17]

Patty Stork testified at the state habeas hearing regarding the matters in her letter.[18] The letter contains statements supposedly made by LS to Patty about whether Schultz actually sexually abused LS. The letter also contains Patty's opinions about the veracity of Terry Schultz (Patty's brother and LS's father) and his possible financial motivations for LS to fabricate claims against Schultz. The letters purportedly from KP and EH [19] are not notarized or signed under penalty of perjury. They reiterate Schultz's claim that there was only a ten minute window between the time school dismissed and the time basketball practice began, and that LS did not leave between school and basketball practice. The letter purportedly from AS is a testament to Schultz's character. AS explains that Schultz was a good father, that she does not believe LS's allegations, and believes LS is a liar. AS's letter is not notarized nor signed under penalty of perjury. The letter from Sandy Lujan is dated February 10, 2010. Ms. Lujan is a friend of Patty Stork. Ms. Lujan's letter addresses the character

---

[16]The state habeas file contains the original "#1 Grandpa" card, but only a photocopy of the typed letter which was purportedly authored by LS. Schultz explained that he lost the original letter when he was sent to the SHU for 70 days. HT at 33.

[17]As noted above, Schultz did not submit a photocopy of the inside of the card to this Court. He did, however, submit the entire original card to the state court. The original "recanting letter" was supposedly lost.

[18]Stork's letter is notarized but not signed under penalty of perjury.

[19]EH is one of LS's former basketball teammates. LS mentioned her during the trial, and the prosecutor unsuccessfully tried to call EH as a witness at trial to bolster LS's testimony. As to EH, it is noted that on Doc. 20 and 27 (the letter purported to be written by EH and Schultz's proposed witness list for his requested § 2254 evidentiary hearing) EH's first name is referred to as "Em." EH's first name, however, is "Erin." *See* Trial Transcript at Vol. 1 p. 189, Vol. 2 at p. 169.

of LS's father, Terry. Ms. Lujan's letter is notarized but is not signed under penalty of perjury. The photocopy of the typewritten letter from "Terry" to "Dad" is undated. The handwritten signature is not notarized. The letter is not signed under penalty of perjury. Finally, the photocopied letters from "Valerie" to "Patty" discuss the character of Terry. The handwritten signatures are not notarized. The letters are not signed under penalty of perjury.

"The existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." *Townsend v. Sain*, 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963). " Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence" *Herrera v. Collins*, 506 U.S. 390, 401, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993).

> The Supreme Court has not decided whether a persuasive demonstration of actual innocence after trial would render unconstitutional a conviction and sentence that is otherwise free of constitutional error. The court has established, however, that the threshold for any such claim, if it were recognized, would be 'extremely high.' *Herrera v. Collins*, 506 U.S. 390, 417, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). The threshold, if it exists, would require 'more convincing proof that the 'gateway' standard that allows for consideration of otherwise defaulted constitutional claims upon a showing of actual innocence. Thus, on a freestanding claim of actual innocence, it is not sufficient that a petitioner shows even that it is 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' The 'extraordinarily high' threshold, if recognized, would be even higher.
>
> \*\*\*
>
> Latter-day impeachment evidence . . 'will seldom, if ever' make a clear and convincing case that no reasonable jury could believe the core of the witness's account. *Sawyer v. Whitley*, 505 U.S. 333, 349, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

*Dansby v. Norris*, 682 F.3d 711, 716 (8th Cir. 2012) (citations omitted, punctuation altered). The above summary reveals the majority of Schultz's "new evidence" is "latter-day impeachment evidence" pertaining to the veracity of either the victim (LS) or her father, Terry Schultz. The veracity of both LS and her father, however, were both questioned extensively during Schultz's state criminal trial. Trial counsel emphasized that Terry Schultz and his father did not have a good relationship and that Terry Schultz had a financial motive to encourage his daughter–the victim (LS) to fabricate the claims against Schultz. The "new" impeachment evidence Schultz has offered this

Court falls short of the extremely high threshold which would render his state court conviction unconstitutional.

Schultz also offers a photocopied letter from LS in which LS purportedly recants her claims. Schultz offers another letter from his daughter Patty. Patty's letter recounts a conversation with LS in which LS allegedly recanted the claims against Schultz. Judge Srstka rejected this purported "new evidence," however, as hearsay. Although Patty testified at the state habeas evidentiary hearing, LS did not. Likewise, LS did not recant her trial testimony in the form of a sworn affidavit.[20]

An affidavit may be verified by a notary stamp or seal. *Jenkins v. Winter*, 540 F.3d 742, 747 (8th Cir. 2008). However, a notary stamp does not transform a letter or written statement into an affidavit or unsworn declaration pursuant to federal law. An unsworn declaration is valid if it is made under penalty of perjury pursuant to 28 U.S.C. § 1746. Although LS's purported signature[21] on the photocopied recanting letter is notarized, the letter is not an affidavit and it is not signed under penalty of perjury pursuant to 28 U.S.C. § 1746.

> "[A] document's qualification as an affidavit is not determined by the presence or absence of the stamp or seal of a notary. And while the notary's stamp states that it was sworn to, the affidavit itself and the notary's stamp do not indicate whether [the author] swore under penalty of perjury or that the content of the affidavit are true. Merely notarizing a signature does not transform a statement into an affidavit, nor does the statement conform to the requirements of 28 U.S.C. § 1746. A notary public cannot convert an otherwise unacceptable statement into an affidavit merely by using the word 'sworn' and affixing a notary's stamp.    Thus, the [author] has not subjected himself to the penalties of perjury should it be determined that the statements contained in his 'affidavit' are false. As a result, while the Court will consider the contents of the document, it does not qualify as an affidavit or unsworn declaration pursuant to 28 U.S.C. § 1746.

*Shaw v. United States*, 2006 WL 1041790 (W.D. N.C.) at *5 (citations omitted, punctuation altered). Because LS did not testify at the state habeas evidentiary hearing and the photocopied recanting

---

[20]Although some of the photocopied letters submitted to the court contained notarized signatures, Schultz submitted no affidavits.

[21]Given the stark difference between LS's original signature contained on the "#1 Grandpa" card which is contained in the state court file and her purported signature contained on the photocopy recanting letter, this Court holds a grave doubt about the authenticity of the signature on the photocopied recanting letter.

letter is not signed under penalty of perjury, Judge Srstka correctly rejected it as hearsay. In *Herrera* the United States Supreme Court rejected hearsay as falling far short of the "extraordinarily high" threshold for free-standing actual innocence claims. *Herrera v. Collins*, 506 U.S. 390, 417, 113 S.Ct. 853, 879, 122 L.Ed.2d 203 (1993).

This Court has carefully reviewed the materials Schultz offered to the state court in support of his actual innocence claim. It has likewise carefully reviewed the additional materials Schultz has offered to this Court in support of his actual innocence claim. Schultz has failed to meet the extraordinarily high threshold required to show that his conviction violates the Constitution. The state court's factual findings are fairly supported by the record, and it did not unreasonably apply clearly established federal law. It is therefore respectfully recommended to the District Court that Schultz's Fifth Claim for Relief be DENIED

## CONCLUSION and RECOMMENDATION

Schultz's habeas corpus claims were adjudicated on the merits in state court on direct appeal and in a habeas corpus action where he was represented by court-appointed counsel. Schultz has failed to satisfy his burden of rebutting the presumption of correctness of the state courts' adjudication by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The state courts' determination was not contrary to, nor did it involve an unreasonable application of clearly established federal law *(Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)), and was a reasonable determination of the facts in light of the evidence presented in the state habeas proceeding. *See* 28 U.S.C. § 2254(d). The claims which have not been exhausted at the state level may nevertheless be dismissed with prejudice because they are untimely and procedurally defaulted.

Schultz has failed to make a "substantial showing of the denial of a constitutional right." A certificate of appealability should not be issued in Petitioner's case. 28 U.S.C. § 2253(c)(2). Although 28 U.S.C. § 2253(c)(2) has been found to be "only a modest standard," Schultz has not shown that "the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement or to proceed further.'" *Randolph v. Kemna*, 276 F.3d 401, 403 n.1 (8th Cir. 2002) (citations omitted).

Therefore, it is respectfully RECOMMENDED to the District Court that:

(1)   Respondent's Request to to Dismiss the Petition without an evidentiary hearing (Doc. 16) be GRANTED;

(2)   A Certificate of Appealability should not be issued;

(3)   Schultz's Application for Writ of Habeas Corpus Writ of Habeas Corpus (Doc. 1 and Doc. 8) and all supplements and amendments thereto be DISMISSED with prejudice;

(4)   Schultz's Motion for Evidentiary Hearing (Doc. 31) be DENIED; and

(5)   Schultz's Motion to Amend Pleadings (Doc. 33) be DENIED.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)

*Nash v. Black,* 781 F.2d 665 (8th Cir. 1986)

Dated this **23** day of April, 2013.

BY THE COURT:

John E. Simko
United States Magistrate Judge

ATTEST:
JOSEPH HAAS, CLERK
by_____, Deputy
(SEAL)